# In the United States Court of Federal Claims

No. 24-1494
(Filed Under Seal: April 18, 2025)
Reissued: May 5, 2025[1]

|  | ) |
|---|---|
| GEMINI TECH SERVICES, LLC, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant, | ) |
|  | ) |
| *and* | ) |
|  | ) |
| JP LOGISTICS & CONSULTING, LLC, | ) |
|  | ) |
| Defendant-Intervenor. | ) |
|  | ) |

**MEMORANDUM OPINION**

*Matthew T. Schoonover*, SCHOONOVER & MORIARTY LLC, Olathe, KS, for plaintiff. Also represented by Ian P. Patterson and Timothy J. Laughlin.

*Laurel D. Havens III*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. Also represented by Brittany Salter, U.S. Army Sustainment Command, and Maj. Kate Calderon, Contract Litigation & I.P. Division, U.S. Army Legal Services Agency.

*Casey J. Mckinnon*, COHEN SEGLIAS PALLAS GREENHALL & FURMAN LLP, Washington, DC, for defendant-intervenor.

***SMITH*, Senior Judge**

This post-award bid protest is before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. Plaintiff, Gemini Tech Services, LLC ("Gemini"),

---

[1] An unredacted version of this opinion was issued under seal on April 18, 2025. The parties responded to the Court's call for redactions, and this decision reflects the Court's ruling on plaintiff's proposed redactions.

challenges the award of a task order to defendant-intervenor JP Logistics & Consulting, LLC, ("JP Logistics"), by the United States Army Contracting Command – Rock Island (the "Army" or the "Agency") under Solicitation No. W519TC-23-R-0094 (the "Solicitation") for "logistics support services" at the Army's Redstone Arsenal in Alabama. *See generally* Plaintiff's Complaint, ECF No. 1 [hereinafter Compl.]; *see also* Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 28 [hereinafter Pl.'s MJAR].

Gemini argues that the Army improperly opened discussions by erroneously determining that all six initial offerors were within the competitive range by relying on incorrect facts and otherwise ignoring the terms of the Solicitation. *See* Pl.'s MJAR at 13. Gemini furthermore argues that those discussions were substantively unequal. *See id*. Gemini seeks a permanent injunction enjoining the Army from proceeding with the award to defendant-intervenor, awardee JP Logistics, and an order directing the Army to either award the contract to Gemini or exclude JP Logistics from a renewed selection process. *See id*. at 34.

In response, defendant, the United States ("the Army"), argues that its decision to open discussions was reasonable and consistent with the terms of the Solicitation, and that those discussions were conducted fairly. *See generally* Defendant's Cross-Motion for Judgment on the Administrative Record, ECF No. 30 [hereinafter Def.'s CJMAR]. The Army contends, moreover, that if Gemini believed that the Army erroneously opened discussions, it should have protested when the Army did so. *See id*. Lastly, the Army opposes Gemini's relief sought. *Id*. Defendant-intervenor, JP Logistics, reiterates the Army's contentions. *See generally* Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record, ECF No. 31 [hereinafter Def.-Intervenor's CMJAR].

For the reasons set forth below, the Court grants Plaintiff's Motion for Judgment on the Administrative Record; denies Defendant's Cross-Motion for Judgment on the Administrative Record; and denies Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record. An injunction shall be issued enjoining the Army from proceeding with the award to JP Logistics and directing the Army to reevaluate proposals in accordance with applicable law and regulations.

## I.   Background

### A.   The Solicitation

On October 3, 2023, the Army issued Solicitation No. W519TC-23-R-0094 ("the Solicitation") for "logistics support services, including maintenance, supply, and transportation support" at the Army's Redstone Arsenal in Alabama. AR 412. The Solicitation was issued as a small business set aside under the Small Business Administration's 8(a) program through the

Army's Enhanced Army Global Logistics Enterprise ("EAGLE") procurement vehicle. *Id*. Only certified small businesses holding basic ordering agreements under the EAGLE program were eligible for award. *Id*. The Solicitation was structured as a competitive best value source selection. AR 471. After completing a strict compliance review, proposals would be evaluated against three evaluation factors: technical acceptability, past performance, and cost/price. AR 470–71.

The evaluation and selection would proceed in three steps. *Id*. During Step 1, proposals that were deemed compliant after the strict compliance review would be evaluated for technical acceptability. AR 471. Proposals would be rated on an acceptable or unacceptable basis. AR 471–72. Proposals were "acceptable" if they "clearly me[t] the minimum requirements" of the Solicitation. AR 472. The Solicitation specified that an offeror would "[c]learly meet the minimum requirements," if it "detail[ed] [a] realistic and feasible approach to delivering services" and "demonstrate[d] [the] ability to staff/organize the required effort." AR 471–72. Technical evaluations would continue until five or twenty percent of the proposals, whichever is greater, were determined to be technically acceptable. AR 471. Only the three lowest-priced compliant proposals deemed technically acceptable would advance to Step 2. *Id*.

During Step 2, the remaining three proposals would be evaluated according to a "qualitative assessment" of the offerors' "demonstrated record[s] of recent and relevant performance." AR 471; AR 473–75. Offerors would be assigned a qualitative confidence rating. AR 471; AR 473–75. The proposals would then be evaluated according to a price realism analysis. AR 471; AR 475–76. All proposals with "Substantial Confidence" in past performance with a realistic price/cost would advance to Step 3. AR 471. Step 3 consisted of the award decision itself. *Id*. The Solicitation specified that the award would be made to the "responsible offeror" with the lowest total evaluated price. *Id*.

The Army reserved the right to conduct discussions if the Contracting Officer "determine[d] that discussions would be advantageous to the Government" at any stage of the evaluation process. *Id*. If the Army conducted discussions during Step 1, the Army would "make a subsequent competitive range determination" for a second round of discussions, and only technically acceptable offerors would remain in the second competitive range and proceed to Step 2. AR 471–72.

### B.     The Army's Evaluation and Award Decision

On November 9, 2023, the Solicitation closed. AR 6552. The Army received six timely proposals, and the Army's Source Selection Evaluation Board determined that all proposals were compliant upon the strict compliance review. *Id*. All six proposals therefore advanced to Step 1. *Id*.

3

The parties' troubles began during Step 1.  On December 14, 2023, the Army's Technical Evaluation Team ("TET") completed its initial evaluation and found all six proposals technically unacceptable.  AR 6660; AR 6791.  After the Army's Contracting Officer "discussed concerns" with the TET, it reconvened and reached the same result.  AR 6791.  On January 10, 2024, the Army's Contracting Specialist voiced disagreement with the TET's findings but forwarded the second round of evaluations to the Contracting Officer and the Army's legal counsel.  *Id*.  The TET reconvened and revised its second round of reports, still finding that all offerors were unacceptable.  AR 6488; AR 6791.

On January 18, 2024, the Contracting Specialist forwarded the TET's latest findings, relating that some of the TET's assessments had been "too critical" and "would lead to a protest." AR 6711.  He explained that, in his view, all proposals *except for JP Logistics* "could potentially be made acceptable."  AR 6710–11 (emphasis added).  The Contracting Officer agreed that "all but one offeror, [JP Logistics], could potentially be found acceptable."  AR 6791.  On January 22, 2024, the TET met with the Army's legal counsel and the Contracting Officer to discuss the evaluations.  AR 6792.  Following this meeting, the TET produced a third and final evaluation report, finding Gemini to be the only technically acceptable offeror.  *Id*.

On January 25, 2024, the Army determined that all six offerors were within the competitive range because "it was in the best interest of the Government to open discussions with all offerors . . . and maximize competition," and because it would promote "efficiency."  AR 4081; AR 6792.  The Army's competitive range determination, dated March 6, 2024, explained that the Army opened discussions because, "[d]uring the technical evaluations, each offeror was determined to be technically unacceptable" and, therefore, the Army could not proceed to Step 2.  AR 4081–82.  In an affidavit prepared for Gemini's first protest before the U.S. Government Accountability Office ("GAO"), the Army's Contracting Officer clarified that she made this determination notwithstanding the TET's latest finding that Gemini had been found technically acceptable.  AR 6792.  She explained that the competitive range determination "mistakenly stated that all offerors were found to be to technically unacceptable."  *Id*.  The Army subsequently opened discussions with all six offerors.  *Id.*

Once the Army opened discussions, the five offerors rated as technically unacceptable received evaluation notices explaining deficiencies in their proposals and were invited to submit revised proposals by February 2, 2024.  AR 3649–66.  The Army informed Gemini that the TET did not "identify any significant weaknesses or deficiencies" in its proposal, but that it would receive an evaluation notice and be given an opportunity to revise its proposal if any weaknesses or deficiencies were later identified.  AR 3660.  The five other offerors submitted revised proposals, and all five were found to be technically acceptable.  AR 4860.  On April 9, the Army closed discussions.  AR 6510.

4

On April 26, 2024, the Army briefly reopened and closed discussions to "provide [Gemini] the opportunity to submit" a revised proposal. AR 6511. The Army explained that Gemini had previously been denied the opportunity "due to a . . . Government oversight." *Id.* Offerors were given the opportunity to submit a final revised proposal by April 30, 2024. AR 6511–12. The Army advised that its proposal remained technically acceptable, and Gemini did not elect to submit a final revised proposal. *Id.*; Pl.'s MJAR at 9. In accordance with the Solicitation, the three compliant, technically acceptable proposals with the lowest total proposed prices advanced to Step 2. AR 4860. The Army selected both Gemini and JP Logistics for Step 2 and assigned each offeror "Substantial Confidence" in past performance. *Id.* The third selected proposal received a less than "Substantial Confidence" rating and did not proceed. *Id.* During the price/cost realism evaluation, the Army determined that both Gemini and JP Logistics proposed reasonable and realistic prices. AR 6522; AR 6539. Because JP Logistics had the lowest total evaluated price, it received the award. AR 4861–62; AR 4896.

### C.     Procedural History

Prior to the instant case, Gemini filed a protest with the GAO. AR 4946–56. On May 28, 2024, Gemini argued that the Army (1) violated the Solicitation's terms by entering discussions with technically unacceptable offerors; (2) unfairly conducted discussions by failing to inform Gemini that it had proposed a higher price than its competitors; and (3) improperly conducted JP Logistics' price/cost realism evaluation by using findings from the technical evaluation. AR 4946–47.

The GAO denied Gemini's protest. *Gemini Tech Servs., LLC*, B-422620, 2024 WL 4263975 (Comp. Gen. Sept. 5, 2024). The GAO concluded that, because the Army reserved the right to conduct discussions "at any stage of the evaluation process," the Army was permitted "to conduct discussions before it determined offerors' final step 1 evaluation ratings." *Id.* at *6. The GAO also held that, even if Gemini could demonstrate that the Army had opened discussions improperly, Gemini failed to demonstrate prejudice. *Id.* at *7. Regarding the fairness of discussions, the GAO held that the Army was under no obligation to disclose that Gemini's proposed price was relatively higher when that price was both reasonable "and only 1.34 percent higher than the independent government estimate." *Id.* at *8 (citing AR 6522). Lastly, the GAO found that the Army did not err in using the TET's assumptions in its cost/price realism analysis. *Id.* at *8–9. According to the GAO, technical findings often inform agencies' price realism analyses, consistent with the Federal Acquisition Regulation ("FAR") and the specific terms of the Solicitation. *Id.* The GAO concluded that Gemini could not demonstrate prejudice because, even if the TET's assumptions were erroneous, any impact on JP Logistics' price would have been minimal. *Id.* at *9.

On September 25, 2024, plaintiff filed its Complaint with this Court seeking a finding in its favor, a permanent injunction, and a new award decision. *See generally* Compl. In October

5

2024, defendant filed the Administrative Record. Administrative Record, ECF Nos. 26, 27 [hereinafter AR]. On October 31, 2024, plaintiff filed its Motion for Judgment on the Administrative Record ("Motion"). Pl.'s MJAR, ECF No. 28. On November 21, 2024, defendant and defendant-intervenor filed their Responses and Cross-Motions for Judgment on the Administrative Record (collectively, "Cross-Motions"). Def.'s CMJAR, ECF No. 30; Defendant-Intervenor's Response and Cross-Motion for Judgment on the Administrative Record, ECF No. 31 [hereinafter Def.-Int.'s CMJAR]. On December 5, 2024, plaintiff filed its reply in support of its Motion and its Response to the Cross-Motions. Plaintiff's Reply, ECF No. 33. On December 17, 2024, and December 19, 2024, defendant and defendant-intervenor filed their replies, respectively. Defendant's Reply, ECF No. 36; Defendant-Intervenor's Reply, ECF No. 39. On December 26, 2024, defendant filed the joint appendix. Joint Appendix, ECF No. 40-1.

On January 14, 2025, the Court held oral argument. On February 28, 2025, the Court issued an Order granting plaintiff's Motion and denying defendant's and defendant-intervenor's Cross-Motions. *See* February 28, 2025, Order, ECF No. 41. In that Order, the Court explained that a memorandum opinion would follow, explaining, in detail, the Court's decision. *Id.* at 1. This is that opinion.

## II.   Standard of Review

The Tucker Act, as amended, grants this Court jurisdiction over bid protest actions. *See* 28 U.S.C. § 1491(b)(1). This Court evaluates claims arising under its bid protest jurisdiction according to the Administrative Procedure Act's standard of review, where the Court shall "hold unlawful and set aside" agency actions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 28 U.S.C. § 1491(b)(4) (incorporating 5 U.S.C. § 706 by reference); *see also Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019).

In other words, an award "may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal citations omitted). Under rational basis review, the Court recognizes the broad discretion afforded to contracting officers and will assess whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *See id.* at 1332–33. The protester bears a heavy burden in showing that an award decision lacks a rational basis. *See id.*

When a challenge is brought alleging a violation of regulation or procedure, the protester must show that the alleged violation was "clear and prejudicial." *See id.* at 1333; *see also Central Ark. Maint., Inc. v. United States*, 68 F.3d 1338, 1342 (Fed. Cir. 1995) (citing *CACI Field Servs., Inc. v. United States*, 854 F.2d 464, 466 (Fed. Cir. 1988). A protestor establishes

prejudice by showing that "there was a substantial chance it would have received the contract award but for" the violation. *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999).

When ruling on motions for judgment on the administrative record under the Rules of the United States Court of Federal Claims Rule 52.1, the Court makes findings of fact as if it were conducting an "expedited trial" on a paper record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355–56 (Fed. Cir. 2005) (construing Rule 52's predecessor). Looking to the administrative record, the Court must determine whether a party has met its burden of proof based on the evidence contained therein. *See id.*; *see also Savantage Fin. Servs. v. United States*, 150 Fed. Cl. 307, 317 (2020) (internal quotations and citations omitted).

### III. Discussion

The issues before the Court are whether the Army erroneously opened discussions and, if the Army did err, whether Gemini was prejudiced as a result. The Court finds that the Army violated FAR 15.306(c)(1) by failing to consider which proposals were "the most highly rated" "against all evaluation criteria" when it established the first competitive range and opened discussions. *See* FAR 15.306(c)(1). But for the Army's error, Gemini would have had a substantial chance of receiving the award. The Army's error was therefore prejudicial, and Gemini is entitled to injunctive relief.[2] Each issue is addressed below.

#### A. The Army Violated FAR 15.306(c)(1).

Under FAR Part 15, a contracting officer must establish a competitive range if they intend to open discussions with offerors. FAR 15.306(c)(1). A competitive range "shall" be comprised of "the most highly rated proposals" "[b]ased on the ratings of each proposal against all evaluation criteria." *Id.* Accordingly, before establishing a competitive range, a contracting officer must rate proposals based on the evaluation criteria and determine which proposals are "the most highly rated." *Id.*; *see also Loc Performance Prods., Inc. v. United States*, 145 Fed. Cl. 57, 67 (2019) ("The court is concerned with whether the agency took proposals' ratings into account in setting the range and explained the reasoning underlying which proposals were included and excluded."); *Info. Sciences Corp. v. United States*, 73 Fed. Cl. 70, 115–16 (2006) (holding that an agency violates FAR 15.306(c) when it fails to consider an evaluation factor when setting a competitive range). And while a contracting officer has broad discretion in establishing a competitive range, *e.g.*, *KSC Boss Alliance, LLC v. United States*, 142 Fed. Cl.

---

[2] Gemini also makes other arguments that (1) the Army relied on inaccurate information in setting the competitive range; (2) the competitive range should have been limited to only technically acceptable offerors; and (3) the Army's discussions were unequal. *See* Pl.'s MJAR at 13–26. The Court does not reach those arguments because it finds for Gemini on other grounds.

368, 380 (2019), that discretion does not extend to deviating from the procedures required by the FAR. *See Info. Sciences Corp.*, 73 Fed. Cl. at 115.

The FAR required the Army's Contracting Officer to rate proposals according to technical acceptability and determine which proposals were "the most highly rated" against that factor. FAR 15.306(c)(1); AR 4081–82. However, the record does not contain *any* analysis of how or why the offerors included in the Army's competitive range were considered the most highly rated against the technical acceptability factor. The Army only explains that it was efficient and in its best interest to open discussions—an insufficient step to establish the competitive range. The limited, and at times conflicting, documentation of the Army's decision-making compounds this error.

The basis of the Army's competitive range determination appears to be the Army's interest in securing a competitive procurement by increasing the number of eligible offerors. AR 4081–82; AR 6792; AR 8081–82. After the Army's first two technical evaluations resulted in none of the offerors being found technically acceptable, and after the Army's third technical evaluation resulted in only one offeror, Gemini, being found technically acceptable, AR 6791, the Army was unable proceed to Step 2 of the evaluation process because it had not met the required threshold of five or twenty percent of all offerors being technically acceptable. AR 471; AR 4081–82. Therefore, to continue the procurement under the terms of the Solicitation, the Army needed to increase the number of technically acceptable offerors. The Army's interest in a competitive procurement is cited in its formal competitive range determination, AR 4081–82, and in the Contracting Officer's declarations. AR 6792; AR 8081–82.

The need to "ensur[e] a competitive acquisition," AR 4082, may be a reasonable basis for deciding to open discussions, but the FAR requires more. An agency must make the finding that an offeror's proposal is among "the most highly rated proposals" based on "all evaluation criteria" for an offeror to be included in the competitive range and participate in discussions. FAR 15.306(c)(1). The Army did not engage in this required analysis. The only portion of the determination that *does* discuss ratings is in error (stating that ". . . each offeror was determined to be technically unacceptable" when Gemini was technically acceptable) and otherwise does not explain which offerors were the most highly rated. AR 4081. While it may have been in the Army's best interest to establish a competitive range under these facts, it was improper to do so without a documented consideration of the most highly rated proposals.

To the extent that the Army now argues that it "believed all six proposals were amongst the most highly rated as they each had the potential to become acceptable," Def.'s Reply at 5 (citing AR 4082), this contention is not supported by the record and suggests a *post hoc* rationalization. Putting aside the point that the Army did not determine which proposals were the most highly rated, it would be counterfactual for the Army to make that determination on the

8

basis that "all six" proposals could be made acceptable where (1) Gemini was already found to be technically acceptable, AR 6792; AR 8081–82, and where (2) the Army had found that JP Logistics could not be made acceptable.³ AR 6710–11; AR 6791. In short, the Army's argument is not supported by the record. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (internal citation omitted) ("[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself."); *Raytheon Co. v. United States*, 121 Fed. Cl. 135, 158 (2015) ("[B]y definition, a *post-hoc* rationale is any rationale that departs from the rationale provided at the time the procuring agency made its decision.") (italics added).

### B.   The Army's Violation Prejudiced Gemini.

The Army's error prejudiced Gemini when it violated FAR 15.306(c)(1) because, had the Army conducted the required "most highly rated" analysis prior to establishing the first competitive range, the composition of that competitive range would have likely been different, because JP Logistics being the *only* offeror with *no* potential to be made technically acceptable while also being among the "most highly rated" per FAR 15.306(c)(1) is logically inconsistent. Additionally, Gemini would have been included in the first competitive range because, at that point, it was the only technically acceptable offeror. These facts show that Gemini had a substantial chance at contract award.

To demonstrate prejudice, a protestor must show "that there was a substantial chance it would have received the contract award but for [the Agency's] error." *Alfa Laval Separation*, 175 F.3d at 1367. "This test is more lenient than showing actual causation," *Bannum*, 404 F.3d at 1358, as the protestor need only show that "there was a substantial chance that [it] would receive an award—that it was within the zone of active consideration." *Alfa Laval Separation*, 175 F.3d at 1367 (citing *CACI Inc.-Federal v. United States*, 719 F.2d 1567, 1574–75 (Fed. Cir. 1983)).

Showing a "substantial chance" that the agency's award decision would have changed but for its error does not require the protestor to prove that it was "next in line" for award and that it thus would have been awarded the contract but for the error. *Rev, LLC v. United States*, 159 Fed. Cl. 80, 90 (2022); *Data General Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). The

---

³ The Contracting Specialist and the Contracting Officer determined that, after the second round of evaluations, JP Logistics could not be made technically acceptable. AR 6710–11; AR 6791. For the proposition that the Army subsequently found that JP Logistics could be made technically acceptable, the Army directs the Court to the results of JP Logistics' first two evaluations, AR 6693–700; AR 6743–50, and JP Logistics' evaluation notice (*i.e.*, the discussions themselves), AR 3663–65. *See* Def.'s Reply at 5. However, nothing within these documents shows that, or explain how, the Army changed its position on JP Logistics' potential to be made technically acceptable. While the Army has the discretion to change its determinations, the Court must rule on the record. The record must therefore contain any such change for the Court to find that the Army's decision was reasonable, and here, the record does not.

protestor need only show that, at a minimum, its chances of contract award would have increased but for the error. *Precision Asset Management Corp. v. United States*, 125 Fed. Cl. 228, 233 (2016). A protestor can still show that its chances of contract award increased "even if the precise contours of the but-for world cannot be discerned." *Centerra Group, LLC v. United States*, 138 Fed. Cl. 407, 421 (2018).

Because the Army did not perform the required analysis of determining which offerors were "the most highly rated" before establishing the competitive range during Step 1, per FAR 15.306(c)(1), the Court does not know how or why the Army concluded that JP Logistics was among the most highly rated for this first competitive range when both the Contracting Specialist and the Contracting Officer determined that JP Logistics was the *only* offeror who did *not* have the potential to become technically acceptable. AR 6710–11; AR 6791. There is, at the least, a logical inconsistency between JP Logistics being the only offeror found to have *no* potential to become technically acceptable during a pass/fail technical acceptability evaluation, yet to also be among the most highly rated. Additionally, Gemini would undoubtedly have been included in the competitive range because it was the only technically acceptable offeror at this point. Furthermore, the potential exclusion of any other offeror resulting from a "most highly rated" analysis would have materially increased Gemini's chances of award. FAR 15.306(c)(1).

Gemini was also ultimately next in line as the offeror with the second-lowest total proposed price and the only other offeror meeting the Solicitation's other requirements. If the test is simply showing that a protestor's chances for contract award increased, and that the protestor does not have to be next in line for award, then being next in line is sufficient to show prejudice for this error. Gemini was therefore well within the Army's "zone of active consideration," *Alfa Laval Separation, Inc.*, 175 F.3d at 1367 (citing *CACI Inc.-Federal*, 719 F.2d at 1574–75), and the Army's failure to conduct the required "most highly rated" analysis before establishing the first competitive range would have likely resulted in a different award decision given the logical inconsistency regarding the awardee, JP Logistics. FAR 15.306(c)(1).

### C. Permanent Injunctive Relief is Warranted.

Gemini seeks a permanent injunction enjoining the Army from proceeding with the award to JP Logistics and an order directing the Army to either award the contract to Gemini or exclude JP Logistics from a renewed selection process. *See* Pl.'s MJAR at 34. When determining if an injunction is proper, the Court must consider "whether . . . (1) the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of*

*Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987)). Gemini has succeeded on the merits of the case, so the Court will consider the three remaining factors, in turn.[4]

First, Gemini will suffer irreparable harm if the Court withholds injunctive relief. In assessing whether a protestor will suffer irreparable harm, "the relevant inquiry . . . is whether plaintiff has an adequate remedy in the absence of an injunction." *GEO Grp., Inc. v. United States*, 100 Fed. Cl. 223, 228 (2011) (quoting *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993). The loss of a fair opportunity to compete for a contract is sufficient to establish irreparable harm. *See, e.g.*, *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 494 (2013) (internal citations omitted). The Army's arbitrary composition of its competitive range materially harmed Gemini's competitive advantage, and no other remedy would adequately restore Gemini's ability to fairly compete for the award.

Second, the balance of hardships weighs in favor of Gemini. Under this factor, the Court considers the relative harms to be suffered by the plaintiff, the government, and the intervening defendant if it were to issue an injunction. *See GEO Grp.*, 100 Fed. Cl. at 229 (quoting *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 715 (2006)). While the Court is cognizant of the burdens placed on the Army and JP Logistics in the context of an injunction, such harms do not outweigh the issuance of an injunction because Gemini was originally the only offeror determined to be technically acceptable. AR 6792. Additionally, to the extent that the award may be further delayed, this Court has observed that "only in an exceptional case would [a delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests." *Ellsworth Assocs., Inc. v. United States*, 45 Fed. Cl. 388, 399 (1999). It is not an exceptional case where, as here, "some of the problems . . . are, at least in part, of defendant's own making." *Reilly's Wholesale Produce*, 73 Fed. Cl. at 716.

Lastly, the issuance of an injunction will serve the overriding public interest in the fair administration of the government's procurement process, particularly, that government officials follow applicable laws and regulations. *See CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 576 (2004); *see also Progressive Indus., Inc.*, 129 Fed. Cl. at 486 (" . . . the public's interest in ensuring the integrity and fairness of the procurement process outweighs the public's interest in permitting [the agency] to conduct its source selection with prejudicial errors and evidence of unequal treatment of the offerors."). Accordingly, Gemini's permanent injunction is granted.

---

[4] The Army does not contest Gemini's argument on these injunction factors. *See* Def.'s CMJAR at 18. JP Logistics likewise offers no argument on the issuance of an injunction beyond success on the merits. *See* Def.-Intervenor's CMJAR at 7–8.

### IV.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Motion for Judgment on the Administrative Record; **DENIES** Defendant's Cross-Motion for Judgment on the Administrative Record; and **DENIES** Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record.  The Army is enjoined from proceeding with the award to JP Logistics, LLC, and the Army **SHALL** reevaluate proposals in accordance with FAR 15.306(c)(1).

**COSTS SHALL** be awarded to plaintiff.

Plaintiff **SHALL** also submit a draft injunction order consistent with this opinion by or before **10 DAYS** of this order.  Defendant **MAY** file any opposition to the injunction's wording by or before **10 DAYS** after plaintiff submits its draft injunction.  No opposition to granting the injunction will be considered.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge