**CORRECTED**

# In the United States Court of Federal Claims

No. 24-1494
Filed: February 5, 2026

|  |  |
|---|---|
| GEMINI TECH SERVICES LLC, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant, | ) ) ) |
| and | ) ) |
| JP LOGISTICS & CONSULTING, LLC, | ) ) ) |
| Defendant-Intervenor. | ) |

**ORDER**

*SMITH*, **Senior Judge**

    This enforcement proceeding comes before the Court on plaintiff Gemini Tech Services LLC's ("Gemini") Motion to Enforce the Permanent Injunction ordered by the Court on May 8, 2025. *See* Gemini Tech Services LLC's Motion to Enforce the Permanent Injunction, ECF No. 61; Permanent Injunction, ECF No. 56. In its motion, Gemini argues that the United States Army's decision to amend Solicitation No. W519TC-23-R-0095 (the "Solicitation") and request revised proposals violates the second prong of the Court's three-pronged permanent injunction order requiring the Army to "conduct an evaluation of the offerors' initial proposal submissions in accordance with the Solicitation." *See* Permanent Injunction Order at 2, ECF No. 56.

    The Court agrees with Gemini and finds that the Army's Solicitation amendment and request for revised proposals fails to comply with the terms and remedial spirit of the injunction order. For the following reasons, Gemini's motion to enforce the permanent injunction, ECF No. 61, is **GRANTED-IN-PART** and **DEFERRED-IN-PART**.

**BACKGROUND**

    A comprehensive recitation of the factual background surrounding the underlying merits dispute can be found in the Court's unsealed memorandum opinion of May 5, 2025, familiarity with which is assumed. *See* May 5, 2025 Opinion and Order, ECF No. 52. To set the stage, however, a brief recount follows.

On October 3, 2023, the Army issued the Solicitation for "logistics support services, including maintenance, supply, and transportation support" at the Army's Redstone Arsenal in Alabama. Administrative Record ("AR") at 412. The Solicitation was issued as a small business set-aside under the Small Business Administration's 8(a) program through the Army's Enhanced Army Global Logistics Enterprise ("EAGLE") procurement vehicle. *Id*. Only certified small businesses holding basic ordering agreements under the EAGLE program were eligible for award. The program utilized a competitive best-value structure, under which proposals were evaluated based on their technical acceptability, past performance, and cost. *Id*. at 471.

After the Solicitation closed in November 2023, Gemini filed a protest with the Government Accountability Office ("GAO") in May 2024, claiming that the Army (1) violated the Solicitation's terms by entering discussions with technically unacceptable offers; (2) unfairly conducted discussions by failing to inform Gemini that it had proposed a higher price than its competitors; and (3) improperly conducted a price/cost realism evaluation submitted by defendant-intervenor JP Logistics & Consulting, LLC ("JP Logistics"). AR at 4946–56.

The GAO denied Gemini's protest in *Gemini Tech Servs., LLC*, 2024 WL 4263975 (Comp. Gen. Sept. 5, 2024) and Gemini initiated a bid-protest in this Court on September 25, 2024, challenging the award of a task-order to JP Logistics under the Solicitation and arguing that the Army's evaluation of various offerors was arbitrary and capricious because (1) the administrative record confirmed Gemini's proposal was the only technically acceptable proposal at one point and thus the Army erred by opening discussions with the other technically unacceptable bidders; and (2) the Army erred by including JP Logistics in those discussions (and subsequently awarding the task order to JP Logistics) after concluding that it could not be made technically acceptable. *See generally* Complaint, ECF No. 1. Gemini's request for relief included, among other things, declaratory and injunctive relief enjoining the Army from proceeding with the task order to JP Logistics and directing the Army to either award the contract to Gemini as the only technically acceptable offeror or excluding JP Logistics from a renewed selection process. *Id*. at 19 ("Requested Relief").

After the parties filed cross-motions for judgment on the administrative record (ECF Nos. 28, 30–31, 33, 36, 39), the Court issued a sealed memorandum opinion on April 18, 2025 (subsequently unsealed on May 5, 2025) finding that (1) the Army violated FAR 15.306(c)(1) by failing to consider which proposals were "the most highly rated … against all evaluation criteria" when it established the first competitive range and opened discussions; and (2) the Army's failure to comply with the FAR prejudiced Gemini. *See* May 5, 2025 Opinion at 7–9. The Court further found that injunctive relief was warranted and invited the parties submit proposed injunction orders for the Court's consideration. *Id*. at 11–12.

Following a status conference and the parties' submission of dueling proposed orders (at ECF Nos. 53–55), the Court issued a permanent injunction order on May 8, 2025. *See* Permanent Injunction Order. The three-pronged order directed the Army to, among other things, "conduct a new evaluation of the offerors' *initial proposal submissions* in accordance with the *Solicitation*." *Id*. at 2 (emphasis added).

2

On October 16, 2025, plaintiff filed the instant motion before the Court, alleging that the Army failed to comply with the Court's injunction order of May 8, 2025 because the Army amended the original Solicitation in September 2025 and requested revised proposals. *See* Motion to Enforce the Permanent Injunction. In Gemini's view, the Army violated the second prong of that order—requiring the Army to "conduct a new evaluation of the offerors' initial proposal submissions in accordance with the Solicitation"—by subsequently amending the original Solicitation, requesting revised bid proposals, and not making an award based on the reevaluation of initial proposals. *Id*. at 4–5.

On November 24, 2025, the government filed a response in opposition to Gemini's motion to enforce, arguing that it has complied with the technical terms of the permanent injunction order because "the Army conducted a reevaluation of the remaining offerors' initial proposals" even though it rendered that exercise meaningless by subsequently amended the Solicitation and requesting revised proposals. *See* Defendant's Response to Plaintiff's Motion to Enforce the Permanent Injunction, ECF No. 64 at 3. The government further argues that its decision to amend the Solicitation and request revised proposals is attributable to a policy change from August 19, 2024—more than a month before this bid-protest was even filed and nearly a year before the Court awarded injunctive relief—requiring EAGLE solicitations to remove language in solicitations relating to capped rates. *Id*. at 2–3. Written briefing concluded on Gemini's pending motion when Gemini filed a reply on December 1, 2025. *See* Gemini's Reply in Support of its Motion to Enforce the Permanent Injunction, ECF No. 65.

On December 8, 2025, the Court held a status conference and requested that the parties submit proposed language to enforce the permanent injunction order if it ultimately found that the Army had not complied with the permanent injunction order. *See* December 12, 2025 Order, ECF No. 66. The parties submitted proposed orders thereafter. *See* Gemini Tech Services' Notice of Proposed Order, ECF No. 67; Defendant's Response to Plaintiff's Notice of Proposed Order, ECF No. 68; Gemini Tech Services' Reply to the Army's Proposed Order, ECF No. 69.

## STANDARD OF REVIEW

This Court may enforce a permanent injunction under its inherent authority to ensure compliance with its orders. *Pacific Gas & Elec. Co. v. United States*, 82 Fed. Cl. 474, 483 (2008) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)). When evaluating such a motion, the Court examines the enjoined party's conduct to determine whether it complied with both the literal terms of the injunction and its remedial purposes. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191–192 (1949). A party could violate that injunction through direct disobedience or by taking actions that, while not expressly prohibited, frustrate the injunction's intended relief. *Id*. Given that enforcement authority may result in civil contempt or sanctions, the Court must also consider whether the conduct in question could be attributable to a reasonable and good faith interpretation of the injunction. *Mission Critical Sols. v. United States*, 104 Fed. Cl. 18, 29 (2012). In such a case where there is reasonable doubt as to whether the injunction prohibited the party's actions in question, the Court should not issue sanctions and instead resolve those ambiguities in favor of the alleged violator. *Id*.

**DISCUSSION**

After careful consideration, the Court finds that the Army's decision to amend the Solicitation in September 2025 and request revised bid proposals fails to comply with the terms and remedial spirit of the second prong in the injunction order. The Army's sole argument is that it has technically complied with the permanent injunction order because it underwent the exercise of "conduct[ing] a reevaluation of the remaining offerors' initial proposals." *See* Defendant's Response to Plaintiff's Motion to Enforce the Permanent Injunction at 3. But what is the point of "conducting a reevaluation" of the initial proposals if the Army's award decisions are not informed by that "reevaluation"? The Army may have undergone the motions of reviewing the initial proposals, but the Army's decision to amend the Solicitation and request revised proposals rendered the reevaluation of initial proposals meaningless.

The second prong of the injunction order was clear: the Army was required to "conduct an evaluation of the offerors' initial proposal submissions in accordance with the Solicitation." *See* Permanent Injunction at 2. The Army cannot credibly argue that it has complied with the order simply by "conducting a reevaluation"—whatever that means—when its procurement decisions were not based on that reevaluation. A party may not do indirectly what he is barred from doing directly, and he may not evade a permanent injunction by relabeling conduct or maneuvering around the intended actions in a way that would frustrate the injunction's remedial purpose. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) ("It does not lie in [in the Respondent's] mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined"). As *McComb* also recognized, "injunctions sometimes need to be phrased with some generality, to give flexibility to cover the endless derivations of a specific kind of prohibited conduct." *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.*, 786 F. App'x 947, 956 (11th Cir. 2019). Taking the Army's interpretation of the May 8 permanent injunction order to its logical next step, the Army could have simply "reevaluated" the initial proposals, discarded those proposals, and awarded the contract to a different offeror that was found technically unacceptable by the Army. As a matter of common-sense, that reading of the injunction order must be rejected.

This reading is also buttressed by the host of options available to the Army to ensure compliance with the injunction order. If the Army interpreted the second prong of the injunction order as merely requiring a cursory reevaluation of initial proposals for its own sake (which is hard to believe), the Army should have asked the Court to clarify the scope of its order or sought an appeal. *Fed. Trade Comm'n*, 786 F. App'x at 955 (a party "could have done a number of things" to comply with an injunction "like appeal or ask the district court for a modification, clarification[,] or construction of the order.") (internal quotation marks omitted). The Army declined to take any of those steps.

In sum, the Court holds that the Army's actions achieved the same result that the injunction forbade: evaluating altered proposals beyond those included in the initial proposals. Were this conduct permitted, the Court's May 8, 2025 directive that the Army reevaluate the *initial proposals* based on the original Solicitation to determine a new award would be rendered meaningless.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Gemini's Motion to Enforce the Permanent Injunction, ECF No. 61.  For good cause shown, the Court **ADOPTS** the proposed order submitted by Gemini enforcing the permanent injunction, ECF No. 67-1, a signed copy of which will be filed on the docket.  The Court **DEFERS** consideration on whether sanctions are warranted pending notification by the parties on the Army's future conduct surrounding this procurement.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge